# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| CRESCENT HOTELS & RESORTS, LLC<br><br>Plaintiff,<br><br>v.<br><br>810 BROAD URE MASTER TENANT, LLC<br><br>Defendant. | Case No.: 1:18-cv-00867-LMB-IDD |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF
## 810 BROAD URE MASTER TENANT, LLC

Defendant, 810 Broad URE Master Tenant, LLC ("810 Broad"), by way of Answer to the Complaint by Plaintiff, Crescent Hotels & Resorts, LLC ("Crescent") hereby says:

## INTRODUCTION

1.      810 Broad denies the allegations contained in ¶ 1 of the Complaint.

2.      810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 2 of the Complaint that are inconsistent with the Property Management Agreement.

3.      810 Broad denies the allegations contained in ¶ 3 of the Complaint.

4.      810 Broad denies the allegations contained in ¶ 4 of the Complaint.

5.      810 Broad denies the allegations contained in ¶ 5 of the Complaint.

6.      810 Broad denies the allegations contained in ¶ 6 of the Complaint.

7.      810 Broad denies the allegations contained in ¶ 7 of the Complaint.

8.      810 Broad denies the allegations contained in ¶ 8 of the Complaint.

9.      810 Broad denies the allegations contained in ¶ 9 of the Complaint.

10.     810 Broad denies the allegations contained in ¶ 10 of the Complaint.

## PARTIES

11.     810 Broad lacks sufficient information to admit or deny the allegations contained in ¶ 11 of the Complaint, and therefore leaves Crescent to its proofs.

12.     810 Broad admits the allegations contained in ¶ 12 of the Complaint.

13.     810 Broad admits the allegations contained in ¶ 13 of the Complaint.

## JURISDICTION AND VENUE

14.     Paragraph 14 of the Complaint calls for a legal conclusion and thus no response is required.

15.     810 Broad denies the allegations contained in ¶15 of the Complaint.

16.     Paragraph 16 of the Complaint calls for a legal conclusion and thus no response is required.

17.     Paragraph 17 of the Complaint calls for a legal conclusion and thus no response is required.

## FACTUAL ALLEGATIONS

### *The Parties' Property Management Agreement*

18.     810 Broad denies the allegations contained in ¶ 18 of the Complaint.

19.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 19 of the Complaint that are inconsistent with the Property Management Agreement and also denies that Crescent actually has significant expertise and capabilities.

2

20.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 20 of the Complaint that are inconsistent with the Property Management Agreement.

21.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 21 of the Complaint that are inconsistent with the Property Management Agreement.

22.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 22 of the Complaint that are inconsistent with the Property Management Agreement.

23.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 23 of the Complaint that are inconsistent with the Property Management Agreement.

24.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 24 of the Complaint that are inconsistent with the Property Management Agreement.

25.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 25 of the Complaint that are inconsistent with the Property Management Agreement.

26.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 26 of the Complaint that are inconsistent with the Property Management Agreement.

27.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 27 of the Complaint that are inconsistent with the Property Management Agreement.

28.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 28 of the Complaint that are inconsistent with the Property Management Agreement.

29.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 29 of the Complaint that are inconsistent with the Property Management Agreement.

30.     Paragraph 30 of the Complaint calls for a legal conclusion and thus no response is required.

31.     Paragraph 31 of the Complaint calls for a legal conclusion and thus no response is required.

32.     Paragraph 32 of the Complaint calls for a legal conclusion and thus no response is required.

33.     810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 33 of the Complaint that are inconsistent with the Property Management Agreement.

### *URE Has Materially Breached The Agreement*

34.     810 Broad denies the allegations contained in ¶ 34 of the Complaint.

35.     810 Broad denies the allegations contained in ¶ 35 of the Complaint.

36.     810 Broad denies the allegations contained in ¶ 36 of the Complaint.

4649621-1

37.    810 Broad denies the allegations contained in ¶ 37 of the Complaint.

38.    810 Broad denies the allegations contained in ¶ 38 of the Complaint.

39.    810 Broad denies the allegations contained in ¶ 39 of the Complaint.

40.    810 Broad denies the allegations contained in ¶ 40 of the Complaint.

41.    810 Broad denies the allegations contained in ¶ 41 of the Complaint.

42.    810 Broad denies the allegations contained in ¶ 42 of the Complaint.

43.    810 Broad denies the allegations contained in ¶ 43 of the Complaint.

44.    810 Broad denies the allegations contained in ¶ 44 of the Complaint.

## <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
**(Breach of Contract)**

45.    810 Broad repeats and realleges its responses to the foregoing paragraphs as if such responses were set forth at length herein.

46.    Paragraph 46 of the Complaint calls for a legal conclusion and thus no response is required.

47.    810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 47 of the Complaint that are inconsistent with the Property Management Agreement.

48.    810 Broad avers that the Property Management Agreement speaks for itself and denies any allegations contained in ¶ 48 of the Complaint that are inconsistent with the Property Management Agreement.

49.    810 Broad denies the allegations contained in ¶ 49 of the Complaint.

50.    810 Broad denies the allegations contained in ¶ 50 of the Complaint.

5

51.  810 Broad denies the allegations contained in ¶ 51 of the Complaint.

52.  810 Broad denies the allegations contained in ¶ 52 of the Complaint.

53.  810 Broad denies the allegations contained in ¶ 53 of the Complaint.

54.  810 Broad denies the allegations contained in ¶ 54 of the Complaint.

55.  810 Broad denies the allegations contained in ¶ 55 of the Complaint.

56.  810 Broad denies the allegations contained in ¶ 56 of the Complaint.

57.  810 Broad denies the allegations contained in ¶ 57 of the Complaint.

## COUNT II
### (Unjust Enrichment)

58.  810 Broad repeats and realleges its responses to the foregoing paragraphs as if such responses were set forth at length herein.

59.  810 Broad denies the allegations contained in ¶ 59 of the Complaint.

60.  810 Broad denies the allegations contained in ¶ 60 of the Complaint.

61.  810 Broad denies the allegations contained in ¶ 61 of the Complaint.

62.  810 Broad denies the allegations contained in ¶ 62 of the Complaint.

63.  810 Broad denies the allegations contained in ¶ 63 of the Complaint.

64.  810 Broad denies the allegations contained in ¶ 64 of the Complaint.

65.  810 Broad denies the allegations contained in ¶ 65 of the Complaint.

66.  810 Broad denies the allegations contained in ¶ 66 of the Complaint.

67.  810 Broad denies the allegations contained in ¶ 67 of the Complaint.

68.  810 Broad denies the allegations contained in ¶ 68 of the Complaint.

4649621-1

**COUNT III**
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201)**

69.     810 Broad repeats and realleges its responses to the foregoing paragraphs as if such responses were set forth at length herein.

70.     810 Broad denies the allegations contained in ¶ 70 of the Complaint.

71.     810 Broad denies the allegations contained in ¶ 71 of the Complaint.

72.     810 Broad denies the allegations contained in ¶ 72 of the Complaint.

**AFFIRMATIVE DEFENSES**

1.     Crescent's Complaint fails to state a claim for which relief may be granted.

2.     Crescent's claim for unjust enrichment is barred in whole or in part because the claim is not cognizable where a contract governs the parties' relationship.

3.     Crescent's claims are barred in whole or in part by Crescent's own conduct that caused its alleged damages.

4.     Crescent's claims are barred in whole or in part by its breaches of its contractual obligations.

5.     Crescent's claims are barred in whole or in part by its own fraudulent conduct.

6.     Crescent's claims are barred in whole or in part by its own breach of fiduciary duty.

7.     Crescent's claims are barred in whole or in part by its conversion of 810 Broad's funds.

8.     Crescent's claims are barred, in whole or in part, by its inequitable conduct and the doctrine of unclean hands,

9.     Crescent's claims are barred, in whole or in part, by its own wrongful conduct.

4649621-1

10.     Crescent's damages, if any, are the results of conduct of third parties over whom 810 Broad had no control.

11.     Crescent's claims are barred by the doctrine of set-off.

12.     Crescent's claims are barred in whole or in part by its failure to mitigate its alleged damages.

13.     Crescent's claims are barred in whole or in part because this Court does not have jurisdiction to adjudicate such claims.

14.     Under the Property Management Agreement, 810 Broad had no obligation to pay state and local taxes.  Crescent had that obligation subject to its ability to recoup paid taxes out of operating revenue.

15.     810 Broad reserves the right to assert additional affirmative defenses as discovery progresses.

## COUNTERCLAIMS

Defendant/Counter Plaintiff, 810 Broad URE Master Tenant, LLC ("810 Broad"), by way of Counterclaims against Plaintiff/Counter Defendant, Crescent Hotels & Resorts, LLC ("Crescent"), hereby says:

## BACKGROUND

1.     In 2009, the ownership and stakeholders of 810 Broad invested approximately $34,000,000 to open the Hotel Indigo franchise located at 810 Broad St, Newark, New Jersey ("Hotel Indigo").

### A.     The IHG License and Guest Satisfaction Scores

2.     On October 30, 2009, 810 Broad entered into a licensing agreement with Holiday Hospitality Franchising, Inc. ("Holiday" or "IHG") to open the Hotel Indigo in Downtown Newark (the "IHG Agreement").

3.     Pursuant to the IHG Agreement, 810 Broad was required to maintain certain standards of hospitality and guest satisfaction or the IHG license to operate Hotel Indigo could be rescinded. The loss of the IHG license would mean not only that Hotel Indigo would have to pay IHG an additional expense of approximately $10,000 every month, but the Hotel Indigo also would lose valuable goodwill that was generated as a result of the IHG Agreement.

4.     Hotel Indigo's compliance with the IHG standards of hospitality and guest satisfaction were to be measured based on guest satisfaction scores compiled from information cards filled out by the Hotel's guests.

5.     On December 4, 2014, 810 Broad opened Hotel Indigo to the public.

6.     810 Broad's initial hotel manager on the date Hotel Indigo opened was Crestline Hotels & Resorts, LLC ("Crestline").

**B.     Crescent's Aggressive Efforts to Obtain the Contract to Control of the Hotel Indigo's Operations**

7.     In or about January 2015, defendant Crescent began to market itself to 810 Broad with the goal of replacing Crestline as the management company for Hotel Indigo.

8.     As part of this effort, Crescent initiated an aggressive scheme to cause 810 Broad to hire Crescent to manage and operate all parts of the Hotel Indigo, including its hotel and restaurant operations even though Crescent knew that 810 Broad had an existing contract with Crestline for management of Hotel Indigo.

4649621-1

9.      As a further part of Crescent's scheme, on February 13, 2015, Ariel Freeman Sanett, Crescent's Vice President of Business Development, sent an e-mail to 810 Broad stating that: "I hope all is well since we last connected. I wanted to check in to see if you've had an opportunity to think further about a management change at the Indigo Newark? I know that you are locked in with some Liquidated Damages, but I do think that if you make a change, **you will find Crescent to be very proactive, strong in driving topline revenue and open and transparent to working with you to make sure the hotel is highly successful**." (emphasis added).

10.     As a further part of Crescent's scheme, on March 6, 2015 Ms. Sanett sent an e-mail to 810 Broad stating that: "Our Element in Harrison is performing very well and was a very strong open. **I think that we could absolutely add value if given the opportunity to work together**." (Emphasis added.)

11.     In reliance on, and as a result of, Crescent's representations regarding its expertise in hotel operation and management, 810 Broad continued the dialogue with Crescent.  To that end, 810 Broad disclosed to Crescent voluminous financial and other confidential information showing, among other things, the revenues and expenses generated from the Hotel Indigo's hotel and restaurant operations.  Accordingly, Crescent was fully aware of the financial condition of the Hotel Indigo and the restaurant located in the hotel before Crescent was ever hired by 810 Broad.

12.     In or about December 2015, 810 Broad began seriously to consider retaining Crescent to operate and manage Hotel Indigo.

13.    To convince 810 Broad to hire Crescent to manage and control the Hotel Indigo and the restaurant, Crescent's Chief Executive Officer, Michael George, sent a December 18, 2015 e-mail to 810 Broad assuring that: "Greg [Griffie] is the leader whom (sic) will be on point from Crescent to fix the restaurant, he is very talented."

14.    In reliance on the foregoing representation, on December 22, 2015, 810 Broad met with Greg Griffie, Crescent's Vice President of Culinary Operations, at Hotel Indigo to discuss Crescent's potential retention.

15.    That same day, Crescent's Griffie sent a confirming e-mail to 810 Broad relating to the meeting, stating in part: "I look forward to working with you on making the F[ood] & B[everage] venues more successful."

16.    Throughout the winter of 2015-2016, Crescent continued to pursue 810 Broad, repeatedly representing that Crescent would be a successful operator of both the food and beverage and rooms operations for Hotel Indigo.

**C.    Relying on Crescent's Representations, 810 Broad Allows Crescent to Take Over the Management of All of the Hotel Indigo's Operations**

17.    On or about April 1, 2016, as a result of Crescent's year-long pursuit of the Hotel Indigo retention and Crescent's numerous representations to 810 Broad regarding Crescent's expertise in the hotel management field, 810 Broad entered into a Property Management Agreement with Crescent whereby Crescent agreed to operate and manage Hotel Indigo (the "Management Agreement").

18.    Section 5.1 of the Management Agreement, Manager's General Covenants provides:

Manager shall provide the Services and manage and operate the Property and its businesses, services, and sales in accordance with applicable law and industry standards for hotels of similar size and quality in substantial accordance with the Franchise and the Loan Documents, and shall use commercially reasonable efforts to operate the Property within the requirements and at all times subject to the restrictions of the applicable Annual Plan. Any action taken by Manager under this Agreement shall be subject to (a) the restrictions of the applicable Annual Plan unless otherwise specifically provided in this Agreement or approved in writing by Master Tenant; (b) the limitations on expenditures contained in the Annual Plan unless otherwise specifically provided in this Agreement or approved in writing by Master Tenant; and (c) the terms of this Agreement.

19.     The Management Agreement also subordinated the rights of Crescent to those of 810 Broad's secured creditors.  *See* Management Agreement, § 5.10.

20.     Moreover, as part of the Management Agreement, Crescent expressly agreed to abide by the terms of the IHG Agreement and to administer Hotel Indigo in compliance with the IHG Agreement.  *See* Management Agreement, § 5.13.

21.     The Management Agreement did not give Crescent the right to prioritize its fees and expenses over a secured creditor of Hotel Indigo, nor did it give Crescent the right to mismanage the Hotel Indigo.

22.     Furthermore, the Management Agreement did not provide for Crescent to elevate its own financial interests in a manner that would put the Hotel Indigo in financial jeopardy.

23.     Crescent's primary management fee under the Management Agreement was based on a percentage of Hotel Indigo's gross revenue; not profit.  *See* Management Agreement, § 3.1.

24.     Pursuant to Section 12.2 of the Management Agreement: "Should either Party commence any action against the other, and/or be involved in the other Party's bankruptcy proceeding, to enforce any obligations hereunder, the prevailing Party shall be entitled to recover

from the other the costs incurred in such action (including without limitation filing fees, deposition fees, witness fees, expert witness."

**D.    Crescent's Mismanagement and Malfeasance in Connection with the Hotel Indigo and Its Finances**

25.    For more than a year 810 Broad relied on the representations by Crescent representatives regarding Crescent's significant and superior expertise in the hotel management field before 810 Broad agreed to the Management Agreement.

26.    Crescent's representations turned out to be materially false as Crescent's performance under the Management Agreement was abhorrent and marked by a pattern of malfeasance, mismanagement and conversion of corporate assets.

27.    Specifically, pursuant to the Management Agreement, Crescent took full control over operation and management of Hotel Indigo as 810 Broad's agent.  As part of the foregoing, Crescent also took full control over Hotel Indigo's cash and assets.  *See* Management Agreement, Articles 6 and 8.  However, these assets remained <u>solely</u> the property of 810 Broad. *See* Management Agreement, § 6.1.

28.    At all times, Crescent was fully aware of the requirement that the Hotel Indigo and Crescent as its Management Company, maintain the hospitality and guest satisfaction standards set forth in the IHG Agreement.  *See* Management Agreement, § 5.13.

29.    As soon as Crescent's management services commenced, it (a) knowingly overburdened Hotel Indigo with expenses that the hotel and restaurant could not support; and (b) exceeded what was budgeted as a means of driving short-term revenue to boost Crescent's management fee, even though Crescent knew from its experience with many hotels that such inflated expenses would ultimately jeopardize the Hotel Indigo's very existence.

30.     Crescent's brazen abuse of the fee structure set forth in the Management Agreement was done to advance Crescent's own self-interest over Hotel Indigo's.

31.     From the outset, Crescent prioritized its own bottom line over that of Hotel Indigo's, which was an immediate breach of the industry standards incorporated by reference in the Management Agreement and a breach of Crescent's duty of loyalty to prioritize the hotel's profit over its own.

32.     Crescent's overspending did little to benefit Hotel Indigo's actual operations or guest satisfaction.

33.     In fact, as a result of Crescent's mismanagement of both the Hotel Indigo's operations and finances, the food and beverage operation at Hotel Indigo hemorrhaged money, faced an increase in theft, and led to extreme guest dissatisfaction.

34.     The rooms department fared no better with bloated costs and high levels of documented guest dissatisfaction.

35.     Furthermore, suspicious accounting entries and adjustments by Crescent for every month were never properly explained.

36.     As a result of the pattern of mismanagement described above, Crescent drove down the Guest Score satisfaction requirement in the IHG Agreement to default levels.

37.     Crescent's mismanagement constituted grossly negligent conduct as well as willful acts in violation of the Management Agreement.

38.     As an effort to conceal its mismanagement and the corresponding guest dissatisfaction at Hotel Indigo, Crescent and its employees provided falsified guest surveys to IHG rather than improve Crescent's management of the hotel.

4649621-1

39. Inevitably, as a result of Crescent's mismanagement, the profitability for Hotel Indigo dramatically missed every budget even as expenses rose.

40. Crescent ignored that its rights under the Management Agreement were subordinated to 810 Broad's secured creditors.

41. Crescent's diversion of funds occurred even at times when Crescent was well aware that, as result of its mismanagement, Hotel Indigo was facing liquidity challenges and that Crescent's diversion of funds would further exacerbate Hotel Indigo's financial situation.

42. Upon information and belief, in or about January of 2018, as a result of Crescent's mismanagement of the hotel and the corresponding falling revenue, Crescent determined that it would cease performing the duties required under the Management Agreement because Crescent was not making enough money from the Management Agreement.

43. However, upon information and belief, Crescent delayed its official termination of the Management Agreement. Crescent used the delay to facilitate the transfer of the liquor license for the Hotel Indigo restaurant (which was in Crescent's name at the time) out of Crescent's name to another party that had recently agreed to lease the Hotel Indigo restaurant.

44. Upon information and belief, Crescent did not want to terminate until after the liquor license transfer because it was concerned about its potential legal liability.

45. Once it had decided that it was going to terminate the Management Agreement in the future, Crescent deliberately failed to devote the resources to managing the Hotel Indigo that were required to comply with the Management Agreement.

46. Crescent's malfeasance was evidenced by further drops in sales, increases in costs and Crescent management refusing to manage the hotel, namely Michael Broadhurst, the

Crescent Regional General Manager assigned to Hotel Indigo. Crescent also ceased providing the requisite oversight over hotel employees, neglected generating new sales leads and ignored issues related to guest satisfaction.

47.     Again, Crescent's mismanagement constituted grossly negligent conduct as well as willful acts in violation of the Management Agreement.

48.     Because Crescent knew the liquor license would be transferred in or around May of 2018, it also escalated its self-dealing at Hotel Indigo.

49.      Crescent intensified a pattern of nonpayment of Hotel Indigo's vendors and creditors as a means of ensuring that Crescent ultimately could divert as much money as possible to Crescent's own coffers prior to the termination.

50.     In or about April of 2018, 810 Broad made transfers of $85,000, $100,000, and $20,000 to Hotel Indigo's operating account.  These funds were specifically earmarked to pay vendors.  However, Crescent unilaterally siphoned off a portion of these transfers to its own accounts.

51.     Then, in the weeks leading up to Crescent's preplanned termination, Crescent ceased paying Hotel Indigo's employees and stopped paying sales taxes to the State of New Jersey, again misdirecting the funds earmarked for those purposes for its own benefit.

52.     This conversion of funds by Crescent for its own purposes was done without the consent of its principal, 810 Broad.

53.     Moreover, prior to Crescent's execution of its termination scheme, Parker Sams, the General Manager of Hotel Indigo, notified the principals of 810 Broad that Crescent had given up supporting the hotel, and he suspected Crescent was planning to terminate the

Management Agreement. Mr. Sams also reported that Crescent, prior to announcing the termination of the Management Agreement, had even offered Mr. Sams a job to relocate to another hotel managed by Crescent despite 810 Broad making it clear to Crescent that Mr. Sams was critical to the hotel's operations and that such a relocation would further devastate Hotel Indigo. However, in the immediate weeks prior to Mr. Sams' statement and Crescent's attempted relocation, Crescent had encouraged 810 Broad to pay Mr. Sams a retention bonus. 810 Broad principals paid Mr. Sams a $10,000 retention bonus based on Crescent's suggestion while Crescent schemed to relocate him.

54. On May 21, 2018, 810 Broad and Crescent received notice from IHG of Crescent's fraud related to the guest satisfaction surveys. Once again this fraud meant that Hotel Indigo would have to pay an additional $10,000 per month to IHG, further increasing the Hotel Indigo's financial losses.

55. On May 18, 2018, Crescent sent 810 Broad an improper letter of termination under the Management Agreement (the "Termination Letter").

56. Michael George, President and Chief Executive Officer of Crescent, subsequently orally advised the principals of 810 Broad that the reason for the termination was that Crescent did not feel it was making enough money.

57. The Termination Letter was inadequate because it failed to provide any information about Crescent's basis for terminating the Management Agreement.

58. Pursuant to § 4.1 of the Management Agreement, Crescent could only terminate the Management Agreement upon proper notice to 810 Broad and, under § 12.5, such notice must be in writing.

4649621-1

59.     The Termination Letter was to provide notice of the reason for termination because without it, 810 Broad Street would be unable to cure as was its right pursuant to Section 4.1(a).

60.     By failing to explain the reason for termination – in writing, as required by the Management Agreement – Crescent failed to comply with the notice provisions of the Management Agreement and stripped 810 Broad of the right to cure its alleged failure.

61.     The Termination Letter was clearly a pretext sent in an effort to distract attention from Crescent's mismanagement of the Hotel Indigo, its fraud on IHG involving the guest surveys, and its breaches of fiduciary duty for failure to safeguard Hotel Indigo's funds.

62.     As a result of the foregoing, Hotel Indigo is and was in default under the IHG Agreement, which will cost the 810 Broad $120,000 annually in higher franchise rates. The damage from the guest survey fraud remains and the monthly penalty continues to accrue.

63.     Significantly, Crescent has put the entire Hotel Indigo franchise in peril under the IHG Agreement, by giving Holiday the ability to rescind the license and force a liquidation, which would result in a consequential loss of the approximately $34,000,000 investment by 810 Broad's ownership group and its stakeholders.

64.     Inexplicably, in addition to improperly terminating the Management Agreement and siphoning all the money out of Hotel Indigo to enrich itself, Crescent sought to cripple the hotel by committing fraud against the franchisor.

65.     810 Broad has demanded on multiple occasions that Crescent answer for its breaches and malfeasance, but Crescent has failed to adequately respond.

66.     If the foregoing were not enough, Hotel Indigo received over $330,000 of insurance proceeds related to a flood that damaged some rooms at the beginning of 2018. Those proceeds went into an operating account controlled by Crescent and were earmarked to pay taxes. However, Crescent has now improperly refused to release those funds to pay the taxes. As a result, 810 Broad has incurred interest and penalties.

67.     Crescent also has refused to release or reimburse those funds critical to the survival of Hotel Indigo as part of an effort to extort funds from Hotel Indigo and its principals. Specifically, Crescent seeks money to indemnify Crescent for its improper firing of a Crescent employee who has now sued Crescent for racial discrimination.

68.     Crescent has improperly demanded that 810 Broad prefund a deductible in the insurance policy that covers its lawsuit against racial discrimination. This is not required per the Management Agreement. The employee who has filed the employment discrimination claim was hired and fired without input from 810 Broad.

69.     Pursuant to the Management Agreement, 810 Broad is not required to indemnify Crescent for employment claims that result from Crescent's grossly negligent or willful acts. *See* Management Agreement, § 11.6(c).

70.     Crescent's termination of its employee was a willful act and if it is proven that Crescent's employment actions were based on racial discrimination, the claim clearly resulted from Crescent's grossly negligent or willful acts.

71.     Accordingly, pursuant to the Management Agreement 810 Broad is not required to indemnify Crescent for any cost related to this pending discrimination claim.

4649621-1

72.     The culminating effect of Crescent's cascade of wrongful actions is that Hotel Indigo's operations and liquidity are in peril.

## FIRST COUNT
### (Breach of Contract)

73.     810 Broad repeats and realleges each and every allegation of the Counterclaim as if fully set forth at length herein.

74.     The Management Agreement is a valid contract between 810 Broad and Crescent.

75.     The Management Agreement required Crescent to manage and operate Hotel Indigo and its businesses, services, and sales in accordance with industry standards for hotels of similar size and quality.

76.     The Management Agreement also required Crescent to manage and operate Hotel Indigo in accordance with the IHG Agreement and to subordinate its rights to 810 Broad's secured creditors.

77.     Crescent breached its obligations under the Management Agreement by failing to manage and operate Hotel Indigo consistent with industry standards, which caused Hotel Indigo's food and beverage operation and rooms department to lose money to an unreasonable degree based on a bloated cost structure, an increase in theft, and extreme guest dissatisfaction.

78.     Crescent further breached the Management Agreement by falsifying guest surveys pursuant to the IHG Agreement.

79.     Crescent also breached the Management Agreement by deliberately refusing to pay Hotel Indigo's critical vendors, secured creditors and taxes and by diverting the hotels funds for its own use.

4649621-1

80.     Further, in order to cover up its material breaches, Crescent additionally breached the Management Agreement by devising a scheme to improperly terminate the Management Agreement without providing written notice to 810 Broad of the basis for such a termination or an opportunity to cure as required by the Management Agreement.

81.     As part of this termination scheme, Crescent's failures to abide by industry standards for hotel management and operation became even more severe when, in the months leading up to this improper termination, it stopped exerting any effort in managing the hotel as evidenced by further drops in sales, increases in costs and Crescent management refusing to perform its duties.

82.     As a direct and proximate result of these breaches, 810 Broad is in default under the IHG Agreement, which will cost 810 Broad $120,000 annually in higher franchise rates.

83.     As a direct and proximate result of these breaches, 810 Broad also has lost significant funds that were earmarked for payment to its secured creditors, vendors, and for taxes, which were instead improperly converted by Crescent.

84.     As a direct and proximate result of these breaches, 810 Broad has lost significant revenue to which it was entitled, and that it would have received but for Crescent's failures.

85.     As a direct and proximate result of Crescent's breaches, 810 Broad has lost significant goodwill with Holiday, which could cause 810 Broad to lose its franchise license and its approximately $34,000,000 investment in Hotel Indigo.

86.     Moreover, by virtue of the Management Agreement between 810 Broad and Crescent, 810 Broad had a reasonable, justifiable, and rightful expectation that Crescent would

execute its hotel management duties in good faith and place the interests Hotel Indigo over its own.

87.     Crescent intentionally destroyed 810 Broad's reasonable, justifiable, and rightful expectations under the Management Agreement by overburdening Hotel Indigo with expenses as a means of driving up Crescent's management fee, which was based on gross revenue; not profit.

88.     Crescent intentionally destroyed 810 Broad's reasonable, justifiable, and rightful expectations under the Management Agreement by, in bad faith, devising a scheme to terminate the Management Agreement without basis.

89.     Crescent intentionally destroyed 810 Broad's reasonable, justifiable, and rightful expectations under the Management Agreement by failing to pay Hotel Indigo's vendors, creditors, employees, and taxes in a timely fashion, instead diverting funds specifically earmarked for the foregoing to its own accounts.

90.     Crescent intentionally falsified, and failed to properly manage guest satisfaction surveys.

91.     Furthermore, after sending the Notice of Termination, Crescent thereafter refused 810 Broad's efforts to communicate with Crescent in order to allow Hotel Indigo to cure any alleged deficiencies as contemplated in the Management Agreement.  Additionally, Crescent failed to turn over to Hotel Indigo the latter's books and records, apparently in an effort to extort additional funds or inappropriate concessions from 810 Broad that Crescent was not entitled to under the Management Agreement.

92.     Crescent thereby acted in bad faith and breached the implied covenant of good faith and fair dealing that is incorporated as a matter of law into all contracts.

4649621-1

93.     As a direct and foreseeable result of Crescent's breaches of the implied covenant of good faith and fair dealing, 810 Broad has incurred damages.

**WHEREFORE**, Defendant/Counter Plaintiff, 810 Broad URE Master Tenant, LLC demands against Plaintiff/Counter Defendant, Crescent Hotels & Resorts, LLC compensatory damages, consequential damages, attorneys' fees, costs, and such other and further relief as this Court deems just, equitable and proper.

### SECOND COUNT
**(Conversion)**

94.     810 Broad repeats and realleges each and every allegation of the Counterclaim as if fully set forth at length herein.

95.     At all relevant times, Crescent had full control Hotel Indigo's cash and assets. However, these assets remained solely the property of 810 Broad.

96.     Upon information and belief, Crescent has improperly diverted 810 Broad's funds for its own use.

97.     This conversion of funds by Crescent for its own purposes was done without the consent of its principal, 810 Broad.

98.     Crescent has also improperly retained over $330,000 of insurance proceeds related to a flood that damaged some rooms at the hotel. Those proceeds went into an operating account controlled by Crescent, but were earmarked to pay taxes. However, Crescent has now improperly refused to release those funds.

99.     Crescent has refused to remit 810 Broad's funds that they are improperly withholding, thereby illegally converting 810 Broad's funds.

4649621-1

**WHEREFORE**, Defendant/Counter Plaintiff, 810 Broad URE Master Tenant, LLC demands against Plaintiff/Counter Defendant, Crescent Hotels & Resorts, LLC a judgment directing Crescent to remit to 810 Broad the funds that Crescent has improperly converted, attorneys' fees, costs, and such other and further relief as this Court deems just, equitable and proper.

### THIRD COUNT
**(Breach of Fiduciary Duty)**

100.    810 Broad repeats and realleges each and every allegation of the Counterclaim as if fully set forth at length herein.

101.    In its capacity as hotel manager and operator and 810 Broad's agent with full control over 810 Broad's cash and assets, Crescent held a position of trust and power with respect to 810 Broad and, therefore, owed 810 Broad fiduciary duties.

102.    Crescent breached its fiduciary duties of care and loyalty to 810 Broad by failing to safeguard 810 Broad's assets and cash and by incurring unreasonably high costs at Hotel Indigo.

103.    Crescent breached its fiduciary duties of care and loyalty to 810 Broad by converting 810 Broad's assets for its own purposes without consent.

104.    Crescent breached its fiduciary duties of care and loyalty to 810 Broad by engaging in a pattern of mismanagement of the hotel and then by improperly attempting to terminate its fiduciary relationship with 810 Broad to cover up its malfeasance.

105.    Crescent breached its fiduciary duties of care and loyalty to 810 Broad by in the months prior to its improper termination abandoning all management duties at Hotel Indigo and by failing to pay the hotel's vendors, creditors, employees, and taxes.

4649621-1

106.     As a direct and proximate result of these breaches, 810 Broad is in default under the IHG Agreement which has cost 810 Broad over $100,000 in higher franchise rates.

107.     As a direct and proximate result of these breaches, 810 Broad has also lost significant funds that were earmarked for payment to its secured creditors, vendors, and for taxes, which were instead improperly converted by Crescent.

108.     As a direct and proximate result of these breaches, 810 Broad has lost significant profit to which it was entitled under the Management Agreement that it would have received but for Crescent's failures.

109.     As a direct and proximate result of these breaches, 810 Broad has lost significant goodwill with Holiday, which could cause 810 Broad to lose its franchise license and its approximately $34,000,000 investment into Hotel Indigo.

**WHEREFORE**, Defendant/Counter Plaintiff, 810 Broad URE Master Tenant, LLC demands against Plaintiff/Counter Defendant, Crescent Hotels & Resorts, LLC compensatory damages, consequential damages, attorneys' fees, costs, and such other and further relief as this Court deems just, equitable and proper.

Dated: August 21, 2018

By:
*/s/ Laurin H. Mills*
Laurin H. Mills (VA Bar #79848)
LECLAIRRYAN, PLLC
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Telephone: (703) 647-5903
Facsimile: (703) 647-5953
laurin.mills@leclairryan.com

*Counsel for Defendant, 810 Broad URE Master Tenant, LLC*

25

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 21, 2018, the foregoing was served on all counsel of

record via the Court's ECF service.

_____/s/ Laurin H. Mills_____

4649621-1